UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

FAMILY CHRISTIAN, LLC *et al.* [1]

        Debtors.

_____/

UNITED METHODIST PUBLISHING HOUSE,
INC. d/b/a ABINGTON PRESS,
AMG PUBLISHERS, INC.,
BAKER BOOK HOUSE COMPANY,
BARBOUR PUBLISHING, INC.,
BARDIN & MARSEE PUBLISHING, LLC,
CATHOLIC BOOK PUBLISHING,
CHARISMA MEDIA, CHRISTIAN ART GIFTS,
CHRISTIAN BRANDS, DAVID C COOK
COMMUNICATIONS, INC.,
DEVELOPMENT SOLUTIONS GLOBAL, INC.
DISCOVERY HOUSE PUBLISHERS,
FOUNDATION PUBLICATIONS,
HARRISON HOUSE, LLC, HENDRICKSON
PUBLISHERS, LLC,INTERVARSITY CHRISTIAN
FELLOWSHIP USA, INC., d/b/a INTERVARSITY
PRESS, LLC, KERUSSO ACTIVEWEAR, INC.,
KINGSTONE MEDIA GROUP, INC. a/k/a
KINGSTONE COMICS, KREGEL, INC. d/b/a
KREGEL PUBLICATIONS, MY HEALTHY
CHURCH, LLC, DESTINY IMAGE, INC., a/k/a
NORI MEDIA GROUP, PURE FLIX
ENTERTAINMENT, LLC, ROSE PUBLISHING,
INC., THE WEE BELIEVERS
TOY COMPANY f/k/a TROPARIAN
CORPORATION, UNIVERSAL DESIGNS, INC.
VISION VIDEO, INC., and WESSCOTT
MARKETING, INC.

        Plaintiffs,

v.

FAMILY CHRISTIAN, LLC *et al.*

        Defendants.

CHAPTER 11

CASE NO. 15-00643-JTG
(Jointly Administered)
HON. JOHN T. GREGG

ADV. PRO. NO. _____

---

[1] The Debtors and Defendants are: Family Christian, LLC; Family Christian Holding, LLC; and FCS Giftco, LLC.

**COMPLAINT FOR (I) DECLARATORY JUDGMENT HOLDING THAT THE CONSIGNED GOODS ARE NOT PROPERTY OF OPERATING DEBTOR'S ESTATE AND THAT THE DEBTORS MUST EITHER RETURN THE CONSIGNED GOODS TO PLAINTIFFS OR PAY FOR THE CONSIGNED GOODS AND CANNOT SELL THEM PURSUANT TO THE SALE MOTION; AND (II) INJUNCTIVE RELIEF**

United Methodist Publishing House, Inc. d/b/a Abington Press, AMG Publishers, Inc., Baker Book House Co., Barbour Publishing, Inc., Bardin & Marsee Publishing, Catholic Book Publishing, Charisma Media, Christian Art Gifts, Christian Brands, David C Cook Communications, Inc., Development Solutions Global Inc., Discovery House Publishers, Foundation Publications, Harrison House, LLC, Hendrickson Publishers, LLC, Intervarsity Christian Fellowship USA d/b/a Intervarsity Press, Kerusso Activewear Inc., Kingstone Media Group, Inc. a/k/a Kingstone Comics, Kregel, Inc., d/b/a Kregel Publications, My Healthy Church, LLC, Destiny Image, Inc. a/k/a Nori Media Group, Pure Flix Entertainment, LLC, Rose Publishing, Inc., The Wee Believers Toy Company f/k/a Troparian Corporation, Universal Designs, Inc., Vision Video, Inc. and Wesscott Marketing, Inc. (collectively, "Plaintiffs"), by their attorneys, Dickinson Wright PLLC, for their Complaint, state as follows:

**JURISDICTION AND VENUE**

1. On February 11, 2015 (the "Petition Date") the Debtors commenced their reorganization cases by each filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, *et seq.* (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. On February 19, 2015, the Court entered an order providing for the joint administration of the Debtors' chapter 11 cases (the "Bankruptcy Cases").

2.  This is an adversary proceeding brought by Plaintiffs for:

(I) Declaratory Judgment holding that the Consigned Goods (as defined below), and the Plaintiffs' interests therein, are not property of the Debtors' estate under 11 U.S.C. § 541, and the Debtors must either return the Consigned Goods to Plaintiffs or pay for the Consigned Goods. Plaintiffs also request this Court to declare that the Debtors cannot sell the Consigned Goods pursuant to *Debtors Motion for (I) an Order (A) Approving Procedures for the Sale of Substantially All of the Debtors' Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (B) Approving the Establishment of Cure Amounts, and (C) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof, and (II) an Order Authorizing (A) The Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, (B) Authorizing the Assumption and Assignment of Executory Contracts and Leases, and (C) Granting Related Relief* (Dkt. No. 30) (the "Sale Motion");

(II) Injunctive Relief; and

(III) Turnover of the Consigned Goods to Plaintiffs and relief from the automatic stay as necessary to effectuate that turnover.

3.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

4.  This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(N) and (O).

5.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

**A.  The Debtors**

6. Family Christian, LLC, a Georgia company (the "Operating Debtor") conducts most all of its business operations through a chain of retail stores known as Family Christian Stores.

7. The Operating Debtor it is wholly owned by Family Christian Holding, LLC (the "Holding Company").

8. The Holding Company does not conduct any business operations, and its primary asset is the ownership of all the membership interests of the Operating Debtor.

9. The Holding Company is 100% owned by a separate, non-debtor company known as Family Christian Resource Centers, Inc. a/k/a Family Christian Ministries, ("FCRC").

10. The Debtors' headquarters and primary management offices are located at 5300 Patterson Avenue SE, Grand Rapids, Michigan, 49530.

11. In 1994, Family Christian Stores, Inc. was incorporated in Michigan.

12. In 2012, the assets of Family Christian Stores, Inc. were acquired by the Operating Debtor, Family Christian, LLC. Both Family Christian, LLC and Family Christian Holding, LLC were formed at the time of the acquisition of the assets, and for the purpose of acquiring the assets, of Family Christian Stores, Inc. and both are organized under the laws of the State of Georgia.

13. The Debtors did not provide notice to most, if any, of the Plaintiffs, of the acquisition, the change in ownership, the change of the state of incorporation, and/or the change in name from Family Christian Stores, Inc. to Family Christian, LLC.

14. After the 2012 Sale, the Operating Debtor continued to conduct business with each Plaintiff pursuant to the respective Consignment Agreements (defined below) with Plaintiffs.

B.  **The Plaintiffs**

15.   The Plaintiffs are 27 separate entities who each consigned goods to the Operating Debtor, including books, music, DVDs, church supplies, and other merchandise.

16.   United Methodist Publishing House, Inc. d/b/a Abington Press is an Illinois corporation doing business in the State of Tennessee located at 201 8th Avenue, Nashville, Tennessee.

17.   AMG Publishers, Inc. is a Tennessee corporation located at 6815 Shallowford Road, Chattanooga, Tennessee.

18.   Baker Book House Company is a Michigan corporation located at 6030 East Fulton Road, Ada, Michigan.

19.   Barbour Publishing, Inc. is an Ohio corporation located at 1810 Barbour Road, Uhrichsville, Ohio.

20.   Bardin & Marsee Publishing, LLC is an Alabama limited liability company located at 1112 N. Shadesview Terrace, Birmingham, Alabama.

21.   Catholic Book Publishing is a New Jersey corporation located at 77 West End Road, Totowa, NJ 07512.

22.   Charisma Media is a Florida entity located at 600 Rinehart Road, Lake Mary, Florida.

23.   Christian Art Gifts is an Illinois corporation located at 359 Longview Drive, Bloomington, Illinois.

24.   Christian Brands is an Arizona corporation located at 5226 S 31st Place, Phoenix, Arizona.

5

25. David C Cook Communications, Inc. is an Illinois corporation doing business in the state of Colorado located at 4050 Lee Vance View, Colorado Springs, Colorado.

26. Development Solutions Global Inc. is a Pennsylvania corporation located at 256 Eagleview Blvd., Suite 303, Exton, Pennsylvania.

27. Discovery House Publishers is a Michigan corporation located at 3000 Kraft Avenue, SE, PO Box 3566, Grand Rapids, Michigan.

28. Foundation Publications is a California entity located at 900 S. Euclid St., La Habra, California.

29. Harrison House, LLC is an Oklahoma limited liability company located at 7498 E. 46th Pl., Tulsa, Oklahoma.

30. Hendrickson Publishers, LLC is a Massachusetts limited liability company located at 140 Summit St., Peabody, Massachusetts.

31. Intervarsity Christian Fellowship USA, LLC d/b/a Intervarsity Press is an Illinois limited liability company, doing business in the state of Wisconsin located at 6400 Schroder Road, Madison, Wisconsin.

32. Kerusso Activewear, Inc. is an Arkansas corporation located at 402 Highway 62 Spur, Berryville, Arkansas.

33. Kingstone Media Group, Inc. a/k/a Kingstone Comics is a Florida Corporation located in Leesburg, Florida.

34. Kregel, Inc. d/b/a Kregel Publications is a Michigan corporation located at 2450 Oak Industrial Dr., N.E., Grand Rapids, Michigan.

35. My Healthy Church, LLC is a Missouri limited liability company located at 1445 N. Boonville Avenue, Springfield, Missouri.

36. Destiny Image, Inc. a/k/a Nori Media Group is a Pennsylvania corporation located at 167 Walnut Bottom Road, Shippensburg, Pennsylvania.

37. Pure Flix Entertainment, LLC is an Arizona limited liability company located at 15300 N. 90th St., Suite 900, Scottsdale, Arizona.

38. Rose Publishing, Inc. is a California corporation located at 4733 Torrance Blvd., #259, Torrance, California.

39. The Wee Believers Toy Company f/k/a Troparian Corporation is an Indiana corporation located at 11650 Lantern Rd., Suite 208, Fishers, Indiana.

40. Universal Designs, Inc. is a Florida corporation located at 855 West New York Avenue, DeLand, Florida.

41. Vision Video, Inc. is a Pennsylvania corporation located at 2030 Wentz Church Road, Worchester, Pennsylvania.

42. Wesscott Marketing, Inc. is a Minnesota corporation located at 7900 Excelsior Blvd., Suite 110, Hopkins, Minnesota.

## GENERAL FACTUAL ALLEGATIONS

43. Operating Debtor is one of the largest sellers of Christian books, music, DVDs, church supplies, and other merchandise.

44. As part of its business, Operating Debtor takes delivery of supplies, inventory and other goods on consignment from various suppliers and vendors, including Plaintiffs. In the Sale Motion, Debtors state that the Operating Debtor currently has on hand approximately $20 million in consignment inventory. *See* Dkt. No. #30-1, Schedule 4.5 to the Sale Agreement (defined below).

45.     Prior to the Petition Date, Operating Debtor entered into Consignment Inventory and Central Distribution Agreements with each Plaintiff (collectively, the "Consignment Agreements") (copies of the Consignment Agreements are attached as Exhibits 1A-1AA).  The Consignment Agreements delineate the rights and obligations of each Plaintiff and the Operating Debtor with respect to goods Plaintiffs deliver to Operating Debtor.

46.     Pursuant to the terms of the respective Consignment Agreements, Plaintiffs delivered to Operating Debtor goods on consignment, (respectively, the "<u>Consigned Goods</u>") to be sold by Operating Debtor.

47.     While the specific language of each Consignment Agreement varies slightly from the next, the general operation of the consignment relationship between Operating Debtor and each Plaintiff, established by the terms of their respective Consignment Agreements, course of dealing, and industry custom, is as follows:

      a.     From its home office merchandise department, Operating Debtor places orders with each of the Plaintiffs.

      b.     All goods ordered by Operating Debtor from Plaintiffs are Consigned Goods.

      c.     Each Plaintiff delivers the Consigned Goods that were ordered from that Plaintiff to Operating Debtor.

      d.     When the Plaintiff delivers the Consigned Goods it transmits an acknowledgement of the shipment of Consigned Goods to the Operating Debtor either via a paper acknowledgment enclosed with the shipment or an "810 document" to Operating Debtor.

   e. Operating Debtor sells the Consigned Goods, collects the sale price from the purchaser, and accounts for the proceeds in the following manner:

    i. At the beginning of each month, Operating Debtor transmits to each Plaintiff a report listing the Consigned Goods sold the previous month.

    ii. Each Plaintiff transmits an invoice to Operating Debtor for payment of the Consigned Goods sold the previous month.

    iii. Operating Debtor is required to pay Plaintiffs' respective invoices at the end of the month.

    iv. If the option to terminate the Consignment Agreement is exercised by either the Operating Debtor or the respective Plaintiff, the Operating Debtor returns to Plaintiff any Consigned Goods that Operating Debtor does not wish to outright purchase, and pays Plaintiff for those Consigned Goods the Operating Debtor wishes to purchase.

48. Each Consignment Agreement can be terminated by either party upon advance written notice to the other party. As of the Petition Date, none of the Consignment Agreements had been terminated and each remained in full force and effect.

49. As of the Petition Date, the Operating Debtor retained possession of certain Consigned Goods and had sold certain other Consigned Goods but had not remitted the corresponding monies due and owing under the respective Consignment Agreements to the respective Plaintiffs.

50. The consignment arrangements between Operating Debtor and each of the Plaintiffs are true consignments outside the scope of Article 9 of the Uniform Commercial Code because: (i) the Operating Debtor is generally known by its creditors to be substantially engaged

in selling the goods of others; (ii) Plaintiffs retained ownership of the respective Consigned Goods; (iii) Plaintiffs set the Retail List Price of the Consigned Goods; and (iv) the Operating Debtor remits to Plaintiff a discounted percentage of the Retail List Price of the Consigned Goods sold and retains the balance, based on an agreed schedule between the Operating Debtor and each Plaintiff. *See generally*, *In re Downey Creations, LLC*, 414 B.R. 463 (Bankr. S.D. Ind. 2009); *United States v. Nektalov*, 440 F.Supp.2d 287 (S.D.N.Y. 2006).

51. Because the consignment arrangements are true consignments outside the scope of Article 9 of the Uniform Commercial Code, the recording of financing statements pursuant to Article 9 of the Uniform Commercial Code is not required and the Consigned Goods are not property of the Operating Debtor's estate. *See generally*, *In re Downey Creations, LLC*, 414 B.R. 463 (Bankr. S.D. Ind. 2009); *In re Valley Media, Inc.*, 279 B.R. 105 (Bankr. D. Del. 2002); *In re Music City RV, LLC*, 304 S.W.3d 806 (Tenn. 2010); *In re Hope*, Case No. 03-30093 (Bankr. S.D. Jan. 15, 2004); *In re Haley & Steele, Inc.*, 20 Mass. L. Rptr. 204 (Sup. Ct. Mass. 2005).

52. Nonetheless, out of an abundance of caution, prior to the Petition Date, several Plaintiffs recorded notices of the consignments and/or financing statements pursuant to Article 9 of the Uniform Commercial Code and renewed such notices as appropriate.

53. Because Debtors failed to inform Plaintiffs of the 2012 acquisition, the change in ownership, the change of the state of incorporation, and/or the change in name from Family Christian Stores, Inc. to Family Christian, LLC, certain of the Plaintiffs, continued to record and renew their respective financing statements in Michigan. The financing statements filed in Michigan validly perfected these Plaintiffs' consignment interests in the respective Consigned Goods and/or properly provided notice of the consignment.

54. The entities that assert competing security interests in the Operating Debtor's assets obtained those interests in 2012 at the time that the assets of Family Christian Stores, Inc., the Michigan corporation, were acquired by Family Christian, LLC, the newly formed Georgia corporation. Because Plaintiffs had validly perfected their consignment interests in the respective Consigned Goods in Michigan at the time of the acquisition, and the competing entities had knowledge, either actual or constructive, of such consignment interests, the security interests of the competing entities is subordinate to the consignment interests of Plaintiffs. *See Northwest Acceptance Corp. v. McClellan Equip Co.*, 79 Or. App. 405, 719 P.2d 887 (Ore. App. 1986); *Bizmark, Inc. v. Air Prods, Inc.*, 427 F.Supp.2d 680 (W.D. Vir. 2006); *Fariba v. Dealer Servs Corp.*, 178 Cal. App. 4th 156 (Cal. App. 2010).

55. Subsequent to the 2012 acquisition, certain of the Plaintiffs recorded financing statements in Georgia. The financing statements filed in Georgia validly perfected these Plaintiffs' consignment interests in the respective Consigned Goods and/or properly provided notice of the consignment.

56. The Debtors have now negotiated with FCS Acquisition, LLC (the "Buyer"), a newly-formed subsidiary of FCRC (the separate, non-debtor parent company described above), for the sale and purchase of substantially all of the assets of the Operating Debtor.

57. The negotiations resulted in a bid for the purchase of Debtors' business on a going concern basis through a sale conducted under Section 363 of the Bankruptcy Code. The bid is memorialized by an Asset Purchase Agreement (the "Sale Agreement", Dkt. No. #30-1).

58. Under the Sale Motion, the Debtors intend to seeks additional bids for the purchase of the assets of the Operating Debtor, using the Sale Agreement as a "stalking horse".

59. The Sale Motion requests entry of an order providing, in relevant part, authorization to sell substantially all of the Debtors' assets free and clear of liens and encumbrances, including the Consigned Goods and valid consignment rights. (Dkt. No. 30).

60. Notwithstanding the fact the Debtors do not own the Consigned Goods, but merely hold them subject to Plaintiffs' interests under the Consignment Agreements, the Debtors seek to sell the Consigned Goods under the Sale Motion.

## COUNT I
## DECLARATORY JUDGMENT HOLDING THAT THE CONSIGNED GOODS ARE NOT PROPERTY OF OPERATING DEBTOR'S ESTATE AND CANNOT BE SOLD PURSUANT TO THE SALE MOTION

61. Plaintiffs incorporate the above paragraphs as though fully restated herein.

62. Plaintiffs respectfully seek declaratory judgment, pursuant to Federal Rule of Bankruptcy Procedure 7001(9) and 28 U.S.C. § 2201, that the Consigned Goods, and the Plaintiffs' respective interests therein, including the proceeds thereof, are not property of Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541 but instead are the exclusive property of each respective Plaintiff, and therefore Debtors cannot sell the Consigned Goods pursuant to the Sale Motion.

63. The Bankruptcy Code defines property of the estate as "… all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.

64. In the Sale Motion, Debtors asked this Court to, among other things, approve the sale of substantially all of the Debtors' assets pursuant § 363 of the Bankruptcy Code.

65. Section 363 of the Bankruptcy Code only applies to "property of the estate." See 11 U.S.C. § 363(b)(1).

66. A bankruptcy court may not allow the sale of property as "property of the estate" without first determining whether the property is property of the estate. *See In re Whitehall*

*Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL 2951974, at *4 (Bankr. D. Del. July 28, 2008) (noting that "even before one gets to Section 363(f), Section 363(b) . . . requires that the estate demonstrate that the property it proposes to sell is "property of the estate").

67. The Debtor bears the burden of proving that the property it is trying to sell pursuant to Section 363 is in fact property of the estate. *See Darby v. Zimmerman*, 323 B.R. 260, 266 (9th Cir. 2005).

68. Debtors have not, and cannot, carry their burden to prove that the Consigned Goods are property of the Operating Debtor's bankruptcy estate.

69. Plaintiffs are entitled to entry of a Declaratory Judgment holding that: (i) the Consigned Goods, and the Plaintiffs' interests therein, including the proceeds thereof, are not property of the Debtors' estate under 11 U.S.C. § 541, and the Debtors must either return the Consigned Goods and/or the proceeds thereof to Plaintiffs or pay for the Consigned Goods; and (ii) the Debtors cannot sell the Consigned Goods pursuant to the Sale Motion.

WHEREFORE, Plaintiffs respectfully request this Court enter a declaratory judgment finding that (1) the Consigned Goods and the Plaintiffs' interests therein, including the proceeds thereof, are not property of the Debtors' estate under 11 U.S.C. § 541, and the Debtors must either return the Consigned Goods to Plaintiffs and/or the proceeds thereof or pay for the Consigned Goods; and (2) the Debtors cannot properly sell Plaintiffs' respective Consigned Goods pursuant to the Sale Motion.

## COUNT II
## INJUNCTIVE RELIEF

70. Plaintiffs incorporate the above paragraphs as though fully restated herein.

71. Each Plaintiff exclusively owns and has an immediate right to possession of its respective Consigned Goods and/or the proceeds thereof and none of the Consigned Goods

and/or the proceeds thereof are part of Debtors' bankruptcy estates because Debtors have no interests therein.

72. Under the Sale Motion, the Debtors impermissibly seek to sell the Consigned Goods free and clear of Plaintiffs' respective consignment interests.

73. Plaintiffs will suffer substantial, immediate and irreparable injury unless and until Debtors, and anyone acting on behalf of, or in concert with them, are enjoined and restrained by order of this Court from undertaking any act to conceal, consign, sell, transfer, or otherwise dispose of or impair the value of the Consigned Goods and/or the proceeds thereof.

74. If Debtors are not enjoined from such conduct, they could use the Consigned Goods and/or the proceeds thereof for purposes other than the purpose intended pursuant to the Consignment Agreements. Such conduct seriously threatens the value of the Plaintiffs' respective ownership of and interests in the Consigned Goods.

75. Accordingly, the Plaintiffs are entitled to an order enjoining Debtors from selling the Consigned Goods and requiring the Operating Debtor to return the Consigned Goods and/or the proceeds thereof to the respective Plaintiffs or alternatively, pay the Plaintiffs for the value of the Consigned Goods as calculated under the applicable consignment agreement.

WHEREFORE, the Plaintiffs respectfully request this Court enter an order: (1) enjoining Debtors from selling the Consigned Goods; (2) ordering Operating Debtor to return the Consigned Goods and/or the proceeds thereof to the respective Plaintiffs; or (3) requiring the Operating Debtor to pay the Plaintiffs for the value of the Consigned Goods as calculated under the applicable consignment agreement To the extent that the automatic stay is applicable, Plaintiffs request that the Court grant Plaintiffs relief from the automatic pursuant to 11 U.S.C. §§ 362(d) and 105(a) to allow Plaintiffs to take possession of the Consigned Goods.

**COUNT III**
**TURNOVER OF THE CONSIGNED GOODS**
**AND RELIEF FROM THE AUTOMATIC STAY**

76. Plaintiffs incorporate the above paragraphs as though fully restated herein.

77. Each Plaintiff exclusively owns and has an immediate right to possession of its respective Consigned Goods and none of the Consigned Goods are part of Debtors' bankruptcy estates because Debtors have no ownership interests therein.

78. Pursuant to 11 U.S.C. §105(a), the Debtors should be required to turn over the Consigned Goods to the respective Plaintiffs.

79. To the extent that the automatic stay is applicable, relief from the stay should be granted pursuant to 11 U.S.C. §§ 362(d) and 105(a) to allow Plaintiffs to take possession of the respective Consigned Goods because, without limitation, the Consigned Goods are not property of the Debtors' estates, Plaintiffs' interests in the Consigned Goods are not adequately protected, the Debtors have no equity in the Consigned Goods, and the Consigned Goods are not necessary to an effective reorganization. Because it would be inefficient and cause needless substantial expense and disruption to the Operating Debtor, the requested relief should be ordered in lieu of simply granting Plaintiffs relief from the automatic stay to pursue their respective state law rights and remedies.

WHEREFORE, the Plaintiffs respectfully request this Court enter an order pursuant to 11 U.S.C. §105(a) requiring the Debtors to turn over the Consigned Goods to the respective Plaintiffs and, to the extent that the automatic stay is applicable, grant Plaintiffs relief from the automatic pursuant to 11 U.S.C. §§ 362(d) and 105(a) to allow Plaintiffs to take possession of the respective Consigned Goods.

|  |  |
|---|---|
| Dated:  March 6, 2015 | By: <u>/s/ Michael C. Hammer</u><br>Michael C. Hammer (P41705)<br>Allison R. Bach (P68299)<br>DICKINSON WRIGHT PLLC<br>500 Woodward Avenue, Suite 4000<br>Detroit, Michigan  48226<br>(313) 223-3500<br>MHammer2@dickinsonwright.com<br>ABach@dickinsonwright.com<br><br>Attorneys for Plaintiffs |

DETROIT 64058-1 1342173v11